In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2432

MARSHALL T. STEWART, JR. and ISIAH WILLIAMS,

Plaintiffs-Appellants,

v.

WILLIAM HENDERSON, Postmaster General
and UNITED STATES POSTAL SERVICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
Nos. 97 C 14 & 97 C 35--Andrew P. Rodovich, Magistrate
Judge.

Argued February 7, 2000--Decided March 13, 2000

Before KANNE, ROVNER and EVANS, Circuit Judges.

ROVNER, Circuit Judge.  The plaintiffs, Marshall
Stewart, Jr. and Isiah Williams, brought this
action under Title VII, 42 U.S.C. sec. 2000 et
seq., alleging that the United States Postal
Service ("USPS") discriminated against them based
upon their status as African-Americans. The
alleged discrimination occurred in the hiring
process for the position of Manager of Processing
and Distribution Facility at the USPS facility in
Lafayette, Indiana. Stewart and Williams were
employees at the Lafayette facility at the time,
and they submitted written applications for the
position along with six other USPS employees. The
pool of applicants was composed of two white
females, three white males, and three African-
American males including Stewart and Williams.

Pursuant to USPS policy, the written
applications were reviewed by a three member
review committee and evaluated under the "STAR"
method, which refers to "Situation on Task,"
"Action" and "Result." The job vacancy
announcement identified the knowledge, skills and
abilities ("KSAs") needed to perform the
position, and applicants were instructed that
their written applications must demonstrate how
they possess each KSA by describing a situation
on task in which they took action and providing

the results of that action, or STAR. The committee then reviewed the applications to determine which candidates were best qualified for the position by analyzing those STAR examples. After reviewing the applications individually, the members of the committee convened a teleconference to discuss their evaluations and make recommendations. The committee recommended four of the applicants for the position, and those persons proceeded to the next stage of the process which involved personal interviews. Stewart and Williams were not among those recommended, although another African-American male was in the recommended group. The three member selection committee conducted interviews of the four finalists, and offered the position to Larry Melton, a white male. Stewart and Williams contend that they were discriminated against based upon their race. The district court granted summary judgment to the USPS, holding that Stewart and Williams had failed to demonstrate that the reasons given by the USPS for its decision were pretextual.

I.

A plaintiff may prove race discrimination under Title VII through direct evidence, or indirectly through the burden-shifting mechanism of McDonnell-Douglas. McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973); Crim v. Bd. of Educ. of Cairo School Dist. No. 1, 147 F.3d 535, 540 (7th Cir. 1998). Stewart and Williams do not allege that they have direct evidence of race discrimination. Under the McDonnell-Douglas test, each plaintiff must first establish a prima facie case of discrimination based on race. 147 F.3d at 540. Once that is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the action. Id. at 541. If defendant meets that burden, then the burden shifts back to the plaintiff to establish that the reasons proferred by the defendant were pretextual. Id. It is this part of the test that is ultimately at issue in this case. Stewart and Williams do not provide any direct evidence that the employer's decision was pretextual in that it was more likely than not motivated by a discriminatory reason. Instead, they attempt to prove pretext through indirect evidence, which can be accomplished by establishing that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were insufficient to motivate the decision. Jackson v. E.J. Branch Corp., 176 F.3d 971, 983 (7th Cir. 1999); Bahl v. Royal Indem. Co., 115 F.3d 1283, 1291 (7th Cir. 1997).

II.

Stewart and Williams argue that the district court erred in considering on summary judgment an affidavit prepared by Walter Hess, the chairperson of the review committee, which detailed the reasons for the committee's decision not to recommend Stewart and Williams. They also argue that those reasons were pretextual, and that the district court erred in granting summary judgment.

In support of the motion for summary judgment, the USPS attached an affidavit from Hess. That affidavit stated, in relevant part, that all three reviewers rated Williams as one of the weakest candidates, and that the consensus on Williams was that his written application responses to the KSAs showed an adversarial quality that would be detrimental in the position. Hess further attested that he initially rated Stewart as one of his top four candidates, but that the other two disagreed. Those reviewers convinced Hess that his rating was too high because in his application Stewart did not document "Actions" that he had taken himself, as is required, but instead had "'too many we's--not anything he did himself.'"

Stewart and Williams maintain that the affidavit represents inadmissible hearsay, and that it should not have been considered by the district court. They also assert that the Hess affidavit is improper to the extent that it goes beyond presenting Hess' own views and sets forth the actions and conclusions of the committee as a whole.

The plaintiffs' hearsay argument rests largely on a misunderstanding of the concept of hearsay. They argue that the affidavit contains inadmissible hearsay because it included statements and thoughts by other committee members and because it set forth the reasons for the review committee's actions, not just Hess' own views. There is only one actual statement by the other reviewers in the affidavit, which is the comment that Stewart's application had too many "we's." That comment at the teleconference is hearsay only if offered for the truth of the matter asserted. Pierce v. Atchinson, Topeka and Santa Fe Railway Co., 110 F.3d 431, 440 n.10 (7th Cir. 1997); United States v. Sanchez, 32 F.3d 1002, 1005 (7th Cir. 1994). Hess did not offer that comment to establish that Stewart's application included too many "we's." Instead, the statement was offered to demonstrate that Hess changed his opinion based on that opinion by his co-members. Even if their view of the application was wrong or misguided, the statements are evidence of what motivated Hess' decision not to recommend Stewart for the

position. In other words, regardless of whether the committee members were correct in how they perceived the application, their statement is relevant to show Hess' state of mind when he made his recommendation. See id. The other, more indirect, references to the opinions of committee members are admissible for the same reason.

Furthermore, Stewart and Williams are simply wrong in asserting that Hess may not testify as to what happened at the teleconference. Hess was a participant in the teleconference, and thus has personal knowledge of what was decided and why. If the plaintiffs' argument was carried to its logical extreme, each committee member could only testify as to his or her personal opinion, but no one could testify as to what the group as a whole decided. There is no legal support for that position, and in fact the plaintiffs have not attempted to provide any. Hess could properly testify as to the reasons why the committee decided not to recommend Stewart and Williams for the position. Therefore, the district court did not err in considering the Hess affidavit when granting summary judgment.

Stewart and Williams make the frivolous argument that if those reasons are considered, the court also was required to consider as a reason for the decision another part of Hess' affidavit, in which Hess indicated that a committee member discussed Williams' EEO complaint. The affidavit makes clear, however, that after the decision not to recommend Williams was made, one member indicated that Williams previously had filed an EEO complaint, and that comment motivated Hess to retain his notes. The affidavit thus negates any claim that the EEO discussion affected the decision, since the decision preceded it. The plaintiffs offer nothing to the contrary. In fact, the plaintiffs never even deposed any member of the review committee, despite having more than a year to do so.

Stewart and Williams also contend that the USPS did not follow the STAR method and that therefore the decision was pretextual. For instance, they argue that the STAR method requires two steps, Phase I and Phase II, and that there was no evidence that Phase I was attempted much less completed. That may be evidence that the USPS did a poor job of implementing the STAR method, but it is not evidence that the proffered reasons were pretextual. The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. Jackson, 176 F.3d at 984; Crim, 147 F.3d at 541; Bahl, 115 F.3d at 1291-92. We do not sit as a superpersonnel department that reexamines an entity's business decision and

reviews the propriety of the decision. Id. Our only concern is whether the legitimate reason provided by the employer is in fact the true one. The plaintiffs do not argue that the members of the review committee did not believe they were using the STAR method, and in fact all evidence indicates that the committee did conduct the review under the STAR method as they understood it. The record includes the STAR worksheets for ranking the candidates, and Hess stated in his affidavit that the committee members rated the candidates and made their recommendations under the STAR method. In order to demonstrate that the reasons given for the decision were pretextual, Stewart and Williams would have to provide evidence not just that the STAR method was poorly implemented, but that the USPS lied about using the STAR method and that we should infer from that a discriminatory reason for the decision. Because all the evidence indicates that the review committee believed it was implementing the STAR method in recommending the candidates, Stewart and Williams have failed to provide any evidence of pretext. Stewart and Williams' contentions in their own affidavits that they applied the STAR method and their ratings indicated that they should have been chosen are self-serving and add nothing to the ultimate issue of pretext.

Finally, Stewart argues that the court should have found an issue of fact created by comparing the application of a selected candidate, Connie Flick, with Stewart's application. Stewart argues that his application used 65% "I's" and 35% "we's", whereas a recommended applicant, Connie Flick, used 66% "I's" and 34%/1 "we's." He therefore asserts that the difference is minimal, and thus the decision based on the absence of personal experience and abundance of "we's" was pretextual. This argument is deficient for a number of reasons, not the least of which is that counting the "I's" and "we's" leaves no sense of the critical issue for a committee of where and how the language is used. In addition, even if we were to ignore that fundamental defect and consider the numbers, Stewart's own example demonstrates that Connie Flick had substantially more examples of personal ("I") rather than group ("we") action. Stewart declares that Flick uses "we" 24 times or 34% of the time, whereas he used it 6 times or 35% of the time. That merely demonstrates that Flick provided many more examples of both personal and group action than Stewart. Of course, Stewart did not mention the number of "I's" in each application, but his own figures indicate approximately 46 for Flick and 11 for Stewart. Far from demonstrating pretext, that actually provides evidence supporting the committee's decision, and certainly does not

provide evidence of pretext.

   For the reasons stated above, the decision of the district court is AFFIRMED.

/1 Stewart's brief actually states 44%, but that would add up to 110%. Regardless of whether it was 34% or 44%, the analysis and disposition would be the same.