NORTHERN INDIANA GUN
& OUTDOOR SHOWS,
INC. Plaintiff,

v.

Brian HEDMAN and Karl
King, Defendants.

No. 3:96–CV–842RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 21, 2000.

Jay T. Hirschauer, Hirschauer and Hirschauer, Logansport, IN, for Northern Indiana Gun & Outdoor Shows Inc., plaintiffs.

Thomas L. Bodnar, Robert C. Rosenfeld, South Bend, IN, for City of South Bend, Stephen Luecke, defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Northern Indiana Gun and Outdoor Shows, Inc. (NIGOS) filed this case seeking to hold defendants Brian Hedman and Karl King liable pursuant to 42 U.S.C. § 1983 for violation of NIGOS's political speech, commercial speech, and equal protection rights. A jury returned a verdict in favor of NIGOS and awarded $300,000 in damages. NIGOS requested, and this court denied on May 8, 2000, permanent injunctive relief. The cause is now before the court on the defendants' motion pursuant to Rules 50(b), 59, and 60(b) of the Federal Rules of Civil Procedure for a judgment as a matter of law, or, alternatively, for a new trial and on NIGOS's petition for attorney fees and costs. The facts of the case are set forth in the court's May 8 order.

### Procedural Issues

A party dissatisfied with a district court's judgment may file either of two different motions: a motion to alter or amend judgment pursuant to Rule 59(e) and a motion for relief from judgment under Rule 60(b). Timing decides whether a motion seeks relief under Rule 59(e) or Rule 60(b). *See Mares v. Busby*, 34 F.3d 533, 535 (7th Cir.1994). Any post-judgment substantive motion filed within ten days of the judgment's entry is deemed a Rule 59(e) motion, but any such motion served more than ten days after the entry of judgment is treated as a Rule 60(b) motion. *See Britton v. Swift Transp. Co.,*

*Inc.*, 127 F.3d 616, 618 (7th Cir.1997). The defendants' initial request that the court consider the testimony of Robert Candler, was made pursuant to Rule 60 and before judgment was entered, and the court denied that request in its May 8 order. The renewal of that motion was filed within ten days of judgment. Accordingly, the court has before it motions for relief pursuant to Rules 50(b)[1] (directed verdict and alternative motion for new trial), 59(b)[2] (new trial), and 59(e) (reconsider May 8 ruling regarding Mr. Candler's testimony).

The defendants argue these grounds for a judgment as a matter of law or a new trial: (1) that the court erred in not entering judgment against NIGOS at the close of the NIGOS's case and at the close of the evidence; (2) that the jury's verdict on liability and damages was against the weight of the evidence; (3) that the court erred when it excluded from evidence the City ordinance that governed the presence of guns on City-owned property; (4) that the court erred when it excused two jurors for cause; (5) that the court erred in not correcting NIGOS's counsel misconduct during the closing argument; (6) that the court erred when it refused to give the defendants' tendered instruction number 6; and (7) that discovery of the location of a key witness during trial provides new evidence.

NIGOS first contends that no motion for a directed verdict was made with respect to defendant Karl King at the conclusion of NIGOS's case, and nothing was argued with particularity in the renewed motion at

1. Rule 50(b) states:

 If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

 (1) if a verdict was returned:
 (A) allow the judgment to stand,
 (B) order a new trial, or
 (C) direct entry of judgment as a matter of law . . . .

2. Rule 59 provides, in relevant part:

 A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

the conclusion of the evidence as to Mr. King or defendant Brian Hedman, but regarded only dismissal of the mayor and city of South Bend. Because the renewed motion was not sufficient or particular, NIGOS argues, the defendants are estopped from raising the motion now. NIGOS also argues that *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209 (7th Cir. 1995), requires a party to request a new trial at the conclusion of all the evidence and because the defendants did not ask for a new trial, mention alleged key witness Mr. Candler, or complain about the amount of money damages at that time, the defendants' request for a new trial now should be denied.

The defendants' motion pursuant to Rule 50 for judgment as a matter of law for insufficiency of evidence was preserved properly and is properly before the court. The defendants, pursuant to Rule 50, moved for a directed verdict on insufficiency of evidence at the close of NIGOS's case as to the defendant Brian Hedman, the City of South Bend, and the civic center Board of Directors (of which Mr. King was chairman at the time of the alleged violations). At the close of the evidence, the court said it presumed the defendants renewed their Rule 50 motion to which the defendants answered affirmatively. When the court asked for further argument, the defendants said they didn't want to belabor previous points made, but wanted to stress the desire to have the mayor and the city dismissed. The court then invited NIGOS to respond to the defendants' reenforced point regarding the mayor and the city and stated that the court "want[ed] to phrase it that way so there is no waiver of the other points raised in the Rule 50 motion." After hearing argument from NIGOS regarding the reenforced point, the court granted part of the renewed motion and dismissed the mayor and the city. The defendants met the plain language requirements of Rule 50 and renewed their directed verdict motion as to all defendants at the close of all the evidence.

A motion for new trial must "state with particularity the grounds therefor" as required by Rule 7(b), whether made under Rule 50 or independently under Rule 59. *See Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d at 213; 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2811 at 131 (2d ed. 1995) (Rule 59 is silent on the form and content of new trial motion and therefore the general rule on motions, Rule 7(b) applies). The defendants' memorandum in support of its motion for judgment as a matter of law fulfils the requirement of Rule 7(b). The motion for new trial on the grounds listed above is properly before this court.

### Merits

 A party that sought judgment as a matter of law pursuant to Rule 50 before the verdict may move again for judgment as a matter of law after the verdict, but only as to claims raised in its prior motion. *See McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1555 (7th Cir.1987); *Morales v. Cadena*, 825 F.2d 1095, 1099 (7th Cir. 1987). The court may grant a new trial pursuant to Rule 59 where "the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miksis v. Howard*, 106 F.3d 754, 757 (7th Cir.1997). A court asked to set aside a jury's verdict must view the jury's decision with great deference and may set aside the jury's assessment of the facts only if the verdict is contrary to the manifest weight of the evidence. *See Riemer v. Illinois Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir.1998); *Robinson v. Burlington N.R. Co.*, 131 F.3d 648, 656 (7th Cir.1997). "As long as there is a reasonable basis in the record to support [the verdict]," it is not to be overturned. *Robinson v. Burlington N.R. Co.*, 131 F.3d at 656. To receive a new trial based on judicial error, a movant must show that the error was substantial enough to deny the movant a fair trial.

*See Perry v. Larson,* 794 F.2d 279, 285 (7th Cir.1986).

### 1. Insufficiency of Evidence

■ The defendants first request relief under Rule 50 and Rule 59 for insufficiency of the evidence. They say the court erred when it didn't grant them judgment as a matter of law at the close of NIGOS's case. The defendants contend that the court should have granted their Rule 50 motions at those points in the trial because at the close of NIGOS's case and at the close of the evidence, none of the theories of liability advanced by NIGOS—First Amendment political speech, First Amendment commercial speech and equal protection violations—could be supported by the evidence. The defendants also challenge the jury determinations of liability and damages for insufficiency of evidence and ask the court to set aside the jury's verdict and grant them either judgment or a new trial.

In its May 8 ruling on NIGOS's request for injunctive relief, the court weighed the evidence regarding the claims under all of the theories offered by NIGOS, as the court was required to do by *Al–Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir.1991) (requiring a court to "find that a constitutional violation exists" before exercising remedial powers). The court evaluated the commercial speech claim under the four-prong test set forth in *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). In that May 8 order, the court stated that "overwhelming testimony at trial supports the conclusion" that the "no weapons on the premises" policy and its enforcement prevented NIGOS from offering what it had to sell because the "ban on firearms and ammunition at a gun show effectively ended gun shows at the Century Center." The court further found that the policy directly advanced the defendants' substantial interest in providing a reasonably safe convention center and was no more extensive than necessary to serve that interest, so the policy survived First Amendment scrutiny. The defendants first argue that the policy did not restrict NIGOS's commercial speech rights. Sufficient evidence was presented at trial to convince the court that NIGOS's commercial speech rights had been restricted, thus the Rule 50(a), Rule 50(b) and Rule 59 standards have been met.

The defendants next argue that the evidence at trial showed that the policy directly advanced a substantial interest and was only as restrictive as necessary, and that NIGOS presented no evidence of less restrictive measures or other steps that could have been taken or could have succeeded. As explained in the May 8 ruling, the issues of the substantial governmental interest and the restrictive extent of the "no weapons on the premises" policy were close questions and questions on which the court heard conflicting testimony from the witnesses at trial. Mr. Hedman testified to the potential risk of injury should an incident involving firearms or a fire occur, but admitted that he had no scientific evidence to back up his fire safety concerns. Several South Bend police officers who worked security at the gun shows testified that there was no safety issue at the Century Center, that the Crosiers ran a safe show, they saw no safety violations, no violations of firearms laws, and no cause for public concern. Forensic engineer Allan Abramow researched the safety risk posed by ammunition in a fire and concluded that ammunition in a fire is not a hazard. A reasonable jury could have concluded that the defendants had no substantial safety interest.

As to the policy's restrictiveness, the jury heard testimony that NIGOS was willing to host a show that prohibited smoking, a step that could have abated Mr. Hedman's fire concerns. In addition, Ms. Crosier testified that while Mr. Hedman was at the Century Center during the last NIGOS gun show held there, he didn't talk with her about smoking or any other safe-

ty concerns he had, or give her a chance to address those concerns. Mr. Crosier testified that he was surprised when he got the letter from Mr. Hedman telling him that NIGOS could no longer have guns or ammunition at gun shows at the Century Center. He also testified that he called Mr. Hedman's office several times in an attempt to come to an agreement or find a solution to Mr. Hedman's concerns and Mr. Hedman wouldn't talk to him.

When the court views the facts most favorably to NIGOS, the court must deny the defendants' Rule 50(b) and 59 motions for insufficiency of evidence—a verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. Reasonable basis exists in the record to support the jury's verdict on the commercial speech claim. Because the court finds that a reasonable jury could have found the defendant liable for violating NIGOS's commercial speech rights, the court need not address the remaining theories of recovery.

■■■ The defendants also challenge the jury's damages verdict as "an abuse of discretion by the jury and not supported by the evidence." A court must review damages evidence in the light most favorable to the jury's verdict, and the verdict must stand unless there is no rational connection between the evidence and the jury's award. *See McNabola v. Chicago Transit Authority,* 10 F.3d 501, 516 (7th Cir.1993). To the extent that the request is based on the damages' excessiveness, the court may "vacate the jury's verdict if the award is either 'monstrously excessive,' 'shocks the judicial conscience,' has 'no rational connection to the evidence,' or clearly appears 'to be the result of passion and prejudice.'" *Fall v. Indiana Univ. Bd. of Trustees,* 33 F.Supp.2d 729, 744 (N.D.Ind.1998) (citations omitted).

■■■ Joy Crosier, the secretary/treasurer and recordkeeper of NIGOS, testified

that the loss of the Century Center as a forum for NIGOS gun shows has cost NIGOS substantial sums of money and financially devastated NIGOS. Rick Croiser, the president of NIGOS, testified that NIGOS lost quite a bit of income as a result of getting booted out of the Century Center. Plaintiff's Exhibits 17 and 18, which contained actual and projected income from NIGOS gun shows, showed the projected losses for the period 1994 to 1998 to be $687,779.00 as the result of the enforcement of the "no weapons on the premises" policy. The defendants argued that the income projections were not accurate and didn't reflect business lost due to Internet sales, but the defendants presented no evidence to refute Mr. or Ms. Crozier's testimony. A rational connection exists between the evidence presented and the amount awarded by the jury. In light of the evidence at trial, the $300,000 award is neither monstrously excessive nor shocking to the judicial conscience, but appears to be the result of considering and weighing the testimony and exhibits presented at trial and the court denies the motion for new trial on this ground.

### 2. New Evidence

The defendants renew their post-trial request to bolster their case regarding the legitimacy of the substantial governmental interest in providing a safe environment for the Century Center patrons. In their response to NIGOS's request for injunctive relief, the defendants asked the court to hear additional evidence under Rule 60(b) on the ground that they had discovered new evidence that directly concerned the propriety of the requested injunction. The new evidence is the testimony of Robert Candler, director of security at the time of the last NIGOS show at the Century Center, who is said to be ready to corroborate Mr. Hedman's testimony about the events and his safety concerns that prompted Mr. Hedman's decision to implement the policy. Mr. Candler's whereabouts were unknown to the defendants at the time of trial. In support of

their original motion, the defendants' counsel filed an affidavit of his pretrial attempts to locate Mr. Candler and an affidavit of Mr. Candler attesting to his finding of someone loading a handgun in the Century Center men's bathroom.

██ Relief under Rule 60(b)(2) "is an extraordinary remedy that is to be granted only in exceptional circumstances." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir.1995). To obtain this relief, a moving party prove five prerequisites: (1) the evidence was discovered following trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result. *See In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 78 F.3d 285, 293–294 (7th Cir.1996). "The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2)" and the five-factor test applies in either instance. *See* 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2859, at 302 (2d ed.1995). The motion must be denied if the moving party falls short on one of these prerequisites. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1673, 146 L.Ed.2d 482 (2000).

██ Mr. Candler reported what he saw to Mr. Hedman in 1994. Mr. Hedman testified at trial that after discussions with Mr. Candler about the last NIGOS show at Century Center he thought it necessary to implement the "no guns on the premises" policy. This case went to trial six years after Mr. Candler's report to Mr. Hedman. The efforts to locate Mr. Candler consisted of looking in the Houston and Wichita

Falls, Texas phone books and asking the City of South Bend's personnel director whether the city had received any inquiries for recommendations for Mr. Candler. No inquiry appears to have been made of police officers with whom Mr. Candler worked.

The court intends no undue criticism (for example, the court has no idea what effect financial constraints may have had), but the efforts to find Mr. Candler cannot be said to have been marked by diligence.

Moreover, it appears that the defendants could have presented Mr. Candler's report to Mr. Hedman even without Mr. Candler. The jury was asked to evaluate Mr. Hedman's motivation in setting the policy; statements on which he based that decision are not hearsay if offered to explain his reasoning, rather than for the truth of the statement. If Mr. Hedman decided on the policy because Mr. Candler's report raised safety concerns—in other words, if the Candler report is why (or part of why) Mr. Hedman did what NIGOS said was intended to curtail its speech—Mr. Candler's report has probative value without regard to its truth or falsity. *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir.2000); *Wolff v. Brown*, 128 F.3d 682, 685 (8th Cir.1997).

The court denies the defendants' renewed motion to hear additional evidence, leaving it unnecessary to address the merits of NIGOS's motion to strike the affidavits.

### 3. *Defendants' Exhibit No. 6*[3]

The defendants twice submitted for admission into evidence, and the court twice rejected, a city ordinance governing the presence of guns on city-owned property. The defendants say the exhibit was submitted primarily on the issue of damages. The defendants argue that it was reversible error to deny admission of a city ordi-

---

3. Defendants' Exhibit E is Ordinance No. 8468–94, the exhibit and ordinance at issue. The defendants also refer to the exhibit as "Defendants' Final Instruction 6." The defen-

dants did submit the ordinance, in part, but it was tendered as "Defendants' Final Instruction 10."

nance that governed the presence of guns on city-owned property and it was error to refuse to instruct the jury on the requirements of that ordinance.

Testimony and exhibits showed Mr. Hedman implemented the "no guns on the premises" policy in January 1994. The ordinance, which included exceptions for persons with permits, was passed in February 1994. The Century Center board of directors approved Mr. Hedman's actions in April 1994. The court excluded the evidence under Rules 402 and 403 of the Federal Rules of Evidence because no evidence at trial showed information about the gun show attendees that would have made the ordinance relevant. First, the ordinance was passed after the policy was made. Second, no evidence at trial showed that those who carried guns into the gun show, whether they were from Indiana or some other state, lacked permits that would allow them to do so on city property or that they were breaking the law in any other way. Permit checks simply weren't made.

After reviewing the parties' in-trial and post-trial arguments about the ordinance, the court believes its ruling to exclude evidence of the city ordinance and to not instruct on an issue in which no evidence existed before the jury, was correct based on the presentations that the parties made to the court at the time of the rulings. The court denies the motion for new trial on this ground.

### 4. Court Error in Excusing Jurors for Cause

The defendants say the court erred in excusing prospective Juror No. 3 and prospective Juror No. 10 [4] for cause during the jury selection. The court excused prospective Juror No. 12 because he volunteered that he was a Mennonite, a part-time preacher, totally opposed to the National Rifle Association and could not be fair in this cause. The court then excused prospective Juror No. 3 after she stated that she could not be fair because she hated guns. The defendants objected when the court excused prospective Juror No. 3 for cause. The defendants argue that NIGOS could not have achieved exclusion of these members of the venire, but NIGOS exercised only one peremptory challenge and had two remaining when the jury selection was complete. A sufficient showing was made that these prospective jurors would be impartial or unfair. Further, because NIGOS could have used its remaining peremptory challenges to remove these prospective jurors, the defendants can show no prejudice by the court's actions in excusing them for cause. The court denies the defendants' motion for a new trial on this ground.

### 5. Misconduct During Closing Argument

■ In closing argument, NIGOS's attorney told the jury it could return a verdict for NIGOS without finding for NIGOS unanimously on any theory. The defendants characterize this as a "blatant misstatement of the law" that went without correction by the court and resulted in undue prejudice and a miscarriage of justice. The defendants never objected to the statement, to the instructions regarding the jury's requirement to come back with a unanimous verdict, or to the verdict form, a simple form that did not include all of the theories under which liability could be found. Instead, the defendants contend that this misstatement created a fundamental error, and that their silence did not constitute a waiver. The defendants rely on *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324 (10th Cir.1996), for the proposition that their failure to object to the verdict form and instructions regarding verdict unanimity didn't preclude subsequent judicial review under Rule 59, which allows a district court, in its discretion, to correct manifest errors of law.

---

4. In fact, the court excused prospective Juror No. 12 for cause; the defendants exercised their third peremptory challenge as to prospective Juror No. 10.

In this circuit, though, plain error generally is not recognized in civil cases, *see Karazanos v. Madison Two Associates,* 147 F.3d 624, 629 (7th Cir.1998) (citing *Stringel v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 415, 421 (7th Cir.1996)), and Rule 103(d) of the Federal Rules of Evidence, which allows a court to take note of plain error in evidentiary rulings, doesn't apply because this wasn't a ruling on evidence is implicated. At trial, the defendants failed to make any objection to NIGOS's closing arguments; the issue is waived. *See Doe v. Johnson,* 52 F.3d 1448, 1465 (7th Cir.1995).

### 6. Court Error Regarding Defendants' Tendered Ins. No. 6

Citing *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), the defendants tendered an instruction for the proposition that "the trier of fact should look at the entire communication to ascertain whether it was commercial or political" speech. The error, if there was any, in not giving the instruction did not affect the substantial rights of the defendants so as to entitle them to a new trial given the court's determination that a reasonable jury could have found a violation of NIGOS's commercial speech rights, the lesser protected right addressed in the defendants' tendered instruction. Accordingly, the court denies the defendants' request for a new trial on this ground.

### Attorney Fees and Costs

 On May 22, 2000, NIGOS timely filed a motion pursuant to Rule 54 of the Federal Rules of Civil Procedure requesting attorney fees and costs. The defendants object on several grounds and objected to the later filing of affidavits in support of the fee request on the grounds that they were untimely filed.

Rule 54(d) of the Federal Rules of Civil Procedure authorizes district courts to award costs to prevailing parties in accordance with specific statutory authorizations. *See Commercial Credit Equipment Corp. v. Stamps,* 920 F.2d 1361, 1368 (7th Cir.1990). 28 U.S.C. § 1920 is a general statute that defines many of the costs that courts may award, *see Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 440–41, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), and 42 U.S.C. § 1988 authorizes a district court to award a reasonable attorney fee to the prevailing party in civil rights litigation. "Costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court directs otherwise." Fed.R.Civ.P. 54(d)(1). A cost may also be recoverable as one of the out-of-pocket costs attorneys traditionally incur in furnishing effective representation to include postage, long-distance telephone calls, photocopying, travel, and paralegal fees. *See Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir.1984). There is no dispute that NIGOS is the prevailing party and is entitled to reasonable costs and fees.

On May 25, NIGOS filed three affidavits filed in support of its attorney fees request, which was timely filed on May 22. These affidavits attest to a reasonable hourly fee for a prevailing plaintiff in a civil rights case. The defendants object to these affidavits on the grounds that they were untimely filed and argue that "[s]tandard practice is that without an extension given by the Court, the affidavits are to be filed with the accompanying motions." NIGOS doesn't disagree that the affidavits were filed outside of the 14-day time limit prescribed by Local Rule 54.1, but argues that neither the local rule nor normal practice requires that affidavits be filed contemporaneously with the motion for fees. The court disagrees.

 The party requesting attorney's fees bears the burden of substantiating the reasonableness of the hourly rates sought. *See Estate of Borst v. O'Brien,* 979 F.2d 511, 515 (7th Cir.1992). That burden includes the requirement of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience,

and reputation. *See Moore v. University of Notre Dame*, 22 F.Supp.2d 896, 910 (N.D.Ind.1998). While a party may submit affidavits to respond to any objections regarding the reasonableness of a proposed fee and its supporting evidence, the burden of initially showing the requested fee requires that any affidavit that establishes the reasonableness of that fee be filed contemporaneously with the petition for fees. The court strikes the contested affidavits as untimely.

The defendants object to the fees that NIGOS requests as to both the reasonableness of the requested hourly rate and the reasonableness of the time spent. The defendants object to (1) NIGOS's proposed rate of $200.00 per hour as unreasonable in light of counsel's experience in civil rights claims; (2) time spent reading various articles relating to guns in general in non-legal newspapers or journals; (3) certain travel expenses; (4) time spent communicating with the media; and (5) any time commingling compensable time with non-compensable time.

▮ Analysis of a requested fee's reasonableness begins by computing the "lodestar" amount, which begins by multiplying the time spent in hours on a case times the appropriate hourly fee charged for such work in the legal community. *See American Knights of Ku Klux Klan v. City of Auburn, Ind.*, 179 F.R.D. 228, 233–234 (N.D.Ind.1997). Before making the lodestar calculation, the court must evaluate the "reasonableness" of each figure presented in the prevailing party's submission of documents regarding time spent on the case and a proposed hourly rate for those involved in such work. *See U.S.(EPA) v. Environmental Waste Control, Inc.*, 737 F.Supp. 1485, 1492 (N.D.Ind. 1990). The court then may adjust the lodestar calculation up or down as necessary depending on the circumstances of the case. *See Moore v. Notre Dame*, 22 F.Supp.2d at 908–909; *Morimanno v. Taco Bell*, 979 F.Supp. 791, 797 (N.D.Ind. 1997).

▮ Jay Hirschauer, counsel for NIGOS, submitted an affidavit with his motion for fees outlining more than 25 years of trial experience that includes trying in excess of 200 jury cases, defending murder cases in six counties, and trying civil rights cases to verdict in two federal district courts. Mr. Hirschauer also submitted five cases for the court's consideration in which courts awarded litigators in civil rights cases in the Northern District of Indiana fees at the prevailing market rates of $175.00 and $200.00 per hour. While the defendants recognize his "commendable experience," they attack his credentials as lacking in First Amendment or Civil Rights law experience.[5]

NIGOS counsel is an experienced litigator, but given the striking of the affidavits of the other attorneys, the court does not believe this record supports an award at the highest rate that civil rights lawyers in South Bend would receive for their services in civil rights litigation. The court sets the reasonable rate for Mr. Hirschauer at $175.00 per hour.

▮ As to the reasonableness of the time spent, the defendants object that NIGOS counsel shouldn't be compensated for his "general education in pursuit of a hobby" or for time commingled with news review and media contact. Without citation to case law allowing costs as a part of attorney's fees for staying current in a chosen practice area, NIGOS responds that the time billed for reviewing newspaper clippings regarding gun show cases occurring throughout the United States is

---

**5.** Defendants also contend that a letter from Robert Leier Justice, a Logansport attorney, that was included in NIGOS's petition for fees indicates the normal compensation in that community to be $150.00 per hour. Although not specifically stated in the letter, Mr. Justice appears to be billing for time spent researching issues on WESTLAW, for which Mr. Justice normally charges $150.00 per hour. The letter simply cannot be said to address a prevailing market rate in Logansport.

the best way to stay current on this law. Counsel's desire to stay current as to the area of law pertaining to gun shows is commendable, the court believes it would be unreasonable to compensate him for what is essentially continuing education in gun show law. NIGOS's solution that the court subtract.10 of an hour in each of the days raised in the defendants' objection regarding the alleged commingling of news review and media contact seems reasonable given the court's review of the entries for those days as well as the remaining entries on the 45–page bill submitted with the petition for fees. The court reduces the hours spent by 2.5 hours (.10 hour per 25 listed days). The reasonable time spent on this case is 591 hours.

While the law governing this case is in some respects complex, the facts are fairly simple and straightforward and the court declines NIGOS's request that the fee be adjusted from the lodestar amount of $103,425.00 (591 hours × $175.00 per hour).

In response to the defendants' objection that the flight to Chicago does not appear to have saved any time, NIGOS responds that the flight cut four hours off of the oral argument trip to the Seventh Circuit. Given that time savings, the flight paid for itself and is reasonable. On January 13, 2000, NIGOS counsel returned to Logansport to "refresh his trial bag and get fresh clothing" to complete a trial that had not been expected at the outset to go into a fifth day; that trip home was a reasonable expense. The defendants also object to the specific costs of a $402.00 flight from Logansport to Chicago on September 25, 1998, $109.89 hotel accommodations on April 1, 2000, and the $5.00 cost of obtaining the case of *Hyde v. Small.* NIGOS doesn't object to striking the *Hyde v. Small* cost or the hotel accommodations from the bill of costs. The court reduces the costs by $114.89.

*Conclusion*

For the foregoing reasons, the court

(1) DENIES the defendants' motion for a directed verdict, or in the alternative for new trial and the renewed motion to consider new evidence [Docket No. 159];

(2) DENIES AS MOOT NIGOS's motion to strike affidavits [Docket No. 174];

(3) GRANTS defendants' motion to strike affidavits [Docket No. 171]; and

(4) GRANTS IN PART and DENIES IN PART NIGOS's petition for attorney's fees and costs and ORDERS the defendants to pay NIGOS $108,043.19 in attorney's fees and costs, an amount based on a 591 hours at an $175.00 hourly rate for Mr. Hirschauer, minus $114.89 from the Bill of Costs.

SO ORDERED.