**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 12, 2005
Decided August 24, 2005

**Before**

HON. DANIEL A. MANION, *Circuit Judge*

HON. ILANA DIAMOND ROVNER, *Circuit Judge*

HON. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3501

| | |
|---|---|
| RITA GHOSH,<br>　　　　*Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | Nos. 04 C 1110 and<br>　　　04 C 1111 |
| CARL J. GETTO and<br>ROBERT C. KAUFMANN,<br>　　　*Defendants-Appellees.* | Michael M. Mihm,<br>*Judge.* |

**O R D E R**

Plaintiff Rita Ghosh sued her former medical residency program and several of its faculty members claiming that her termination from the program constituted a deprivation of a liberty interest without due process of law, and was impermissibly based on her national origin in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. Because we find that Ghosh's complaint failed to allege that any defendant had publicly disclosed any disparaging information about her, we affirm the dismissal of her due process claim. And because we find that the defendants' proffered reason for firing her was not pretextual, we also affirm the grant of summary judgment on Ghosh's Section 1981 and Title VII claims.

## I.  BACKGROUND

Ghosh, a United States resident and Indian national, joined the OB/GYN residency program of Southern Illinois University's School of Medicine (hereinafter, "SIUM") in 1998.  Due to visa troubles and procrastination in ending her relationship with a previous employer, Ghosh began her residency with SIUM six weeks late.  Upon arrival, she was placed at Memorial Medical Center (hereinafter, "Memorial")[1]—one of the hospitals with which SIUM is affiliated—and entered into a Physician Agreement with both Memorial and Southern Illinois University, subject to the renewal, non-renewal, and termination provisions of the agreement itself.

Three days into her residency, Ghosh was given a poor performance evaluation by the OB/GYN program director, defendant Dr. Kaufmann, who told her that she was not able to perform a patient history and physical exam or to delineate pertinent facts and findings.  Dr. Kaufmann ultimately concluded that Ghosh was not performing at the level of a fourth year medical student.  On about September 3, 1998, she met with Dr. Kaufmann and Dr. Amy Hall, the OB/GYN Chief Resident, about her performance in program clinics.  In this discussion, Ghosh was told that patients had reported that Ghosh scared them—complaints that the doctors thought attributable, at least in part, to the fact that Ghosh was not white and spoke with an accent.  The doctors even surmised that "Nurses will probably not like you if you're not white."

Despite her assignment to special programs designed to improve her work, Ghosh continued to have problems in meeting program responsibilities and expectations.  By the time of her six week evaluation in October 1998, complaints from the faculty revealed that she was slow, unwilling to work with several doctors, unwilling to take responsibility for shortcomings and made excuses by blaming others, and sometimes late or altogether absent.  She had on at least one occasion failed to follow-up with a patient as required.

Ghosh's three month evaluation revealed that she was "poor" in the areas of self-confidence, interpersonal relationships, patient management, diagnostic ability, fund of knowledge, and manual skills.  Most alarming was the revelation that Ghosh would write progress notes on labor patients by copying nurses' notes as her own—without observing the patient herself.  On the day after her three month evaluation, while working with Dr. Hall in the hospital's STORK clinic, Ghosh was unable to find a patient's cervix.  By December 1998, she continued to inadequately

---

[1] By order dated April 11, 2005, issued pursuant to joint motion, defendants-appellees Memorial, Robert T. Clarke, and Shirley Kirk have been dismissed as parties to this appeal, leaving this appeal to proceed solely with respect to appellees Carl J. Getto and Robert C. Kaufmann.

or inconsistently document vital information on patient charts, such as fetal movement, uterine contractions, loss of fluid from the vagina, and vaginal bleeding. She then failed to give a presentation required as part of the normal course of her education.

On January 12, 1999, the OB/GYN faculty unanimously agreed that Ghosh should be terminated from the program. Dr. Kaufmann, however, and despite having become concerned that she posed a danger to patients, held off on terminating Ghosh. Then reports that Ghosh had falsified patient charts began to surface. Thus, on February 1, 1999, Dr. Kaufmann dismissed Ghosh from the program, effective February 15, 1999.

Ghosh then retained attorneys to pursue an internal grievance, but, when it was filed, no claim of discrimination was mentioned. After a hearing, in which Ghosh was represented by counsel, the Grievance Hearing Committee unanimously agreed with the decision to terminate. Ghosh then filed unsuccessful charges of discrimination with the Illinois Department of Human Rights, yielding an administrative decision ultimately affirmed by Illinois state courts. She sued Memorial in state court for breach of contract, but that claim was ultimately dismissed.

Ghosh then filed her first of two federal complaints (before Judge Scott) against Memorial and several SIUM employees in their individual capacities, alleging, among other things, that her dismissal in the middle of an academic year constituted a deprivation of a liberty interest without due process of law, and that the defendants had discriminated against her in connection with her employment contract based on her national origin in violation of 42 U.S.C. § 1981. She later filed a second federal complaint, alleging, among other things, that the defendants violated her rights protected by Title VII of the Civil Rights Act of 1964 by discriminating against her based on her national origin. In a December 2001 order by Judge Scott, the district court dismissed the due process claim, finding that Ghosh failed to allege that any defendant publicly disclosed any disparaging information about her. Both federal complaints were then consolidated and transferred to Judge Mihm. In an August 2004 order, Judge Mihm granted summary judgment in favor of defendants on Ghosh's Section 1981 and Title VII claims, finding that the defendants had advanced legitimate, non-discriminatory reasons for her termination that were not pretextual. Ghosh appeals.

## II. ANALYSIS

### A. Ghosh Cannot Establish a Deprivation of Liberty Interest

#### 1. Due Process Claim Not Barred By This Court's Prior Decision

The individual defendants argue that we cannot consider Ghosh's appeal of the dismissal of her deprivation of liberty without due process claim because her arguments are barred by an earlier decision made by another panel of this court.

Ghosh filed two notices of appeal stemming from the two rulings rendered below. The first (the appeal at bar, docketed 04-3501), appealing from Judge Mihm's August 2004 summary judgment ruling against her Section 1981 and Title VII claims, was timely. The second (docketed 04-3685), appealing Judge Scott's December 2001 dismissal of the due process claim, was not timely. The second appeal came before a different panel of this court, which dismissed the appeal for lack of jurisdiction in an order dated December 17, 2004.

Ghosh concedes that her second appeal challenging the dismissal of her due process claim was dismissed, but contends that we may consider the issue here because it falls within the umbrella of the first notice of appeal that was timely filed. Federal Rule of Appellate Procedure 3 provides that "[t]he notice of appeal . . . shall designate the judgment, order or part thereof appealed from." However, "the rules of Procedure, including Federal Rule of Appellate Procedure 3, will be liberally construed." *Badger Pharmacal, Inc. v. Colgate Palmolive Co.*, 1 F.3d 621, 624 (7th Cir. 1993). In *Badger*, the appellant's notice of appeal mentioned only the final judgment disposing of its complaint, and neglected to mention a prior order that had dismissed several of its other claims. Nonetheless, the court held that "by appealing the order resulting in dismissal of the complaint and final judgment for the defendants, [appellant] sufficiently demonstrated its intention to appeal all orders previously issued by the district court." *Id.* at 626. Here Ghosh also argues that her appeal of the order granting summary judgment on her remaining claims and a final judgment for defendants suffices to demonstrate her intention to appeal all previously issued orders—including that dismissing her due process claim. Such a conclusion does make sense, in that appellants are not free to appeal the dismissal of one set of claims until final judgment is entered on any and all surviving claims. *Id.* Furthermore, "[o]rdinarily, an appeal from a final judgment brings up for review all previous orders entered in the case." *Id.* Accordingly, we find that Ghosh's first appeal sufficed to preserve her appeal of the dismissal of her deprivation of liberty interest claim.

We also note that, contrary to the appellees' contention, the doctrine of res judicata does not preclude this panel from considering the dismissal of this due process claim. Res judicata requires, among other things, that there be a prior final judgment on the merits, and dismissal for lack of jurisdiction is not such a judgment. Fed. R. Civ. P. 41(b) ("[A] dismissal . . . , *other than a dismissal for lack of jurisdiction*, . . . operates as an adjudication upon the merits.") (emphasis added); *see also Sachs v. Ohio Nat. Life Ins., Co.*, 148 F.2d 128, 132 (7th Cir. 1945) ("[A] ruling is not res adjudicata when made in a case subsequently dismissed for want of jurisdiction."). Though Ghosh's attempt to amend her first notice of appeal came before another panel in the form of a "second appeal," that panel dismissed the action for want of jurisdiction—staving off the preclusive effect of res judicata in the appeal at bar.

### 2.   Ghosh Did Not Aver Public Disclosure of Stigmatizing Information

Having decided that Ghosh's appeal of the dismissal of her due process claim is properly before us, we now proceed to assess the merits of that claim.

> In order to state a claim for deprivation of a liberty interest in one's post employment reputation, a plaintiff is required to show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure.

*Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991); *see also Townsend v. Vallas,* 256 F.3d 661, 669-70 (7th Cir. 2001).  Ghosh claimed that she was deprived of a liberty interest to pursue the occupation of her choice without due process of law when she was terminated from her residency prior to the end of the academic year.  The district court dismissed this claim, finding that she had failed to allege that any defendant had publicly disclosed any disparaging information about her.

Ghosh argues that her complaint should be reviewed under the less stringent standard afforded to pro se litigants, *see, e.g., Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002); *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988), as the record indicates that she filed her complaint pro se (though she had previously been and currently is represented by counsel).  Even if the court were to grant Ghosh the benefit of the pro se litigant rule, her complaint must still allege facts which in some manner implicate the claimed constitutional concern.  *Wilson*, 839 F.2d at 378-79 (finding pro se complaint failed to state various constitutional claims by failing to mention any phrases that might somehow invoke the provisions of the Constitution from which the claimed constitutional protections were derived).

Here, the claim is rooted in stigmatization and public disclosure—yet nowhere in Ghosh's complaint is it alleged that the defendants stigmatized Ghosh or publicly disclosed her ineptitude in medicine.  The complaint does mention a due process violation, but it does so in the context of a deprivation of a *property* interest (her contractual rights—a claim since dismissed and not here appealed).  The complaint does allege that Ghosh was terminated in the middle of the academic year and that in the time since she has been unable to obtain another residency.  Ghosh insists that public disclosure is implicit in such allegations, in that such dismissal in and of itself sends a message to the public that Ghosh is unfit for any residency program.  But the mere act of dismissing a resident—particularly one found by an educational facility to be unfit to interact with patients under its program's care—does not constitute the sort of affirmative stigmatizing communication contemplated by this gloss on due process.  If it did, then all premature terminations—even those for undisputedly valid educational reasons—would constitute a deprivation of liberty claim.  *See Hannon v. Turnage*, 892 F.2d 653, 660 (7th Cir. 1990) ("[E]ven assuming that any information

surrounding his dismissal was sufficiently damning to implicate a liberty interest, the government must still have participated in the dissemination of this information to the public."); *Simpkins v. Sandwich Cmty Hosp.*, 854 F.2d 215, 218 (7th Cir. 1988) ("Denial of a liberty interest requires more than just being fired.") (citing *Perry v. FBI*, 781 F.2d 1294, 1302 (7th Cir. 1986)). Thus we affirm the dismissal of Ghosh's due process claim.

**B.    Section 1981 and Title VII Claims—Reason for Termination Was Not Pretextual**

Ghosh next claims that she was terminated on the basis of her national origin (Indian), in violation of her rights under both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act. Section 1981 prohibits discrimination in the creation and enforcement of contracts: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b). Title VII of the Civil Rights Act makes it unlawful for an employer "to discharge any individual . . . because of such individual's . . . national origin." 42 U.S.C. 2000e-2(a)(1). Because "[w]e analyze § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII of the Civil Rights Act," *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 176 (7th Cir. 1996), we, like the district court, shall consider both of Ghosh's national origin discrimination claims together.

To prevail, Ghosh must prove that any discrimination against her on her employer's part was intentional. *Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998). "An employee may demonstrate her employer's intentional discrimination by providing either direct or indirect evidence." *Id.* Here, Ghosh claims to have indirect evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) outlines a burden shifting approach to proving intentional discrimination through indirect evidence. First, a plaintiff must establish a *prima facie* case of discrimination based on her membership in a protected class. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). If such a *prima facie* case is established, then a presumption of discrimination will arise and the burden will shift to the defendant to provide a legitimate, non discriminatory reason for the challenged action. *Id.* "If defendant meets that burden, then the burden shifts back to the plaintiff to establish that the reasons proffered by the defendant were pretextual." *Id.* The parties do not dispute that a *prima facie* case was established,[2] or that a legitimate, non-discriminatory reason was provided (in the

---

[2] To establish a prima facie case of discrimination, a plaintiff must establish that she was (1) a member of a protected class; (2) meeting her employer's

(continued...)

form of substantial evidence that Ghosh was not performing at expected levels). Rather, the controversy here centers on whether the proffered reason was pretextual.

A plaintiff may establish pretext either "by presenting direct evidence that [her national origin] played a role in the challenged action or indirectly by creating a genuine issue of material fact regarding the sincerity of the proffered reason for that action." *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 379 (7th Cir. 2000). Ghosh seizes upon a September 1998 conversation between her and Drs. Kaufmann and Hall in challenging the sincerity of the defendants' proffered reason. In that conversation (prompted, in part, by patient complaints that Ghosh's accent made her difficult to understand), Kaufmann opined that "people are biased and prejudiced against you if you're not white, if you speak with an accent. Nurses will probably not like you if you're not white." But these statements do not belie a "prejudicial mind set" on the part of the *decision maker*, but rather observations of how *third parties* might be prejudiced against her. Furthermore, in light of their content and context, these isolated comments were unrelated to the employment decision in question—a decision that would not occur until five months after this conversation took place. *See, e.g., Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116 (7th Cir. 1992) ("[I]n order to suffice as evidence of racial animus in support of a claim of disparate treatment, the racial remarks must be relatively contemporaneous to the termination of employment and must be 'related to the employment decision in question.'"); *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997) ("[R]emarks unrelated to the employment decision in question may not overcome summary judgment if they stand alone as evidence of the employer's discriminatory intent.").

Ghosh insists that the September 1998 conversation does not stand alone, but rather there is additional evidence that, combined, suffice to establish a reasonable inference of pretext. She cites inadmissible hearsay that the school

---

[2](...continued)
legitimate expectations; (3) suffered an adverse employment action; and (4) treated less favorably by the employer than similarly situated individuals not in her protected class. *Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997). Ghosh satisfies prongs 1 and 3 easily (she is Indian and was terminated). The district court found she also satisfied prongs 2 and 4, if just barely, because there was limited evidence (albeit vastly outweighed by evidence of poor job performance) that her performance had improved; and another similarly situated doctor outside Ghosh's protected class was allowed to finish the academic year before her termination became effective. We will assume, without deciding, that Ghosh has adduced enough evidence of job improvement to allow a reasonable inference of meeting employer expectations, and has thus established a prima facie case.

intended to replace her with another resident even before she arrived. She cites an internal memo that says individuals who had no part in the decision making process (other residents) mistreated Ghosh, mentions that Ghosh has a foreign medical education (an obstacle that even Ghosh acknowledged), and concludes by expressing the "need to stand behind her." Finally, Ghosh asserts that Dr. Kaufmann gave a false reason for her termination by informing the chair of the OB/GYN department (Dr. PonJola Coney) that no one in the clinical faculty wanted to work with Ghosh—a claim Ghosh claims to be patently untrue. But even if it is false, and even if Dr. Kaufmann provided such a reason at variance with Ghosh's official termination letter, that would not support a reasonable inference that the documented reasons were pretextual. Dr. Coney played no part in the decision to terminate Ghosh. For those who did participate in that decision (the faculty, Dr. Kaufmann, the Grievance Committee, and Dean Getto), the documented reasons for her dismissal have gone unchanged.

Accordingly, we agree that Ghosh has failed to establish a reasonable inference of pretext, and thus affirm the district court's grant of summary judgment in appellees' favor on Ghosh's Section 1981 and Title VII claims.

### III. CONCLUSION

For the reasons stated above, we AFFIRM the dismissal of Ghosh's due process claim, and the grant of summary judgment in appellees' favor on her Section 1981 and Title VII claims.