*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: JOSE ANTONIO RODRIGUEZ,

*Debtor.*

No. 06-1988

---

STUART GOLD, Trustee for the Estate of Jose
Antonio Rodriguez,

*Plaintiff-Appellant,*

*v.*

FEDEX FREIGHT EAST, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-74737—George C. Steeh, District Judge.

Argued: April 24, 2007

Decided and Filed: June 27, 2007

Before: KEITH, BATCHELDER, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** D. Rick Martin, Detroit, Michigan, for Appellant. Laura A. Brodeur, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellee. **ON BRIEF:** D. Rick Martin, Detroit, Michigan, for Appellant. Laura A. Brodeur, Matthew S. Disbrow, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court, in which KEITH, J., joined. BATCHELDER, J. (pp. 9-10), delivered a separate concurring opinion.

1

## OPINION

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Jose Antonio Rodriguez ("Rodriguez") sued his former employer, Defendant-Appellee FedEx Freight East, Inc. ("FedEx"), in a Michigan state court, alleging that FedEx discriminated and retaliated against him on the basis of his race, in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS §§ 37.2101 et seq. Citing the parties' diversity of citizenship, FedEx removed the suit to the United States District Court for the Eastern District of Michigan. Rodriguez subsequently filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan (the "bankruptcy court"), and his claims became assets of the bankruptcy estate. Accordingly, when FedEx moved for summary judgment on both of Rodriguez's claims, the district court referred the motion to the bankruptcy court for resolution. The bankruptcy court granted the motion, dismissing Rodriguez's claims with prejudice, and the district court affirmed that judgment. Rodriguez now appeals. For the reasons set forth below, we **AFFIRM IN PART** and **VACATE IN PART** the district court's judgment and **REMAND** this case for further proceedings.

## I. BACKGROUND

Rodriguez began working for American Freightways ("American") as a truck driver in 1999, under the supervision of Regional Human Resource Manager Rodney Adkinson ("Adkinson"). Rodriguez subsequently resigned to go into business with his brother, but was rehired by American in December 2000. In February 2001, FedEx acquired American, and both Rodriguez and Adkinson became FedEx employees. Rodriguez was based at FedEx's facility in Romulus, Michigan but spent most of his time in his truck, making deliveries. Adkinson worked mainly in Indiana but visited the Romulus facility once or twice a month.

In June 2002, Rodriguez told Adkinson that he (Rodriguez) was interested in becoming a FedEx supervisor. Adkinson recommended that Rodriguez take FedEx's Leadership Apprentice Course ("LAC"), and Rodriguez subsequently enrolled in that program. While Rodriguez was taking LAC classes, three supervisory positions became vacant. According to then-Customer Service Manager Jon McKibbon ("McKibbon"), Rodriguez applied and was twice interviewed for at least one of those positions. McKibbon found Rodriguez to be qualified for the position and claims that he would have hired Rodriguez but for Adkinson's stated concern that Rodriguez's accent and speech pattern would adversely impact Rodriguez's ability to rise through the company ranks. Former FedEx Manager Dale Williams ("Williams") similarly avers that, when he asked Adkinson why Rodriguez had not been selected for promotion, Adkinson replied with disparaging remarks concerning Rodriguez's "language" and "how he speaks" and stated that Rodriguez was difficult to understand. Joint Appendix ("J.A.") at 328 (Williams Aff. at 2 ¶ 8).

According to Rodriguez, both McKibbon and Williams told him of Adkinson's derogatory remarks about Rodriguez's accent and ethnicity and statements to the effect that Adkinson "would not allow [Rodriguez] to become a supervisor at FedEx because of [Rodriguez's] Hispanic speech pattern and accent." J.A. at 428-29 (Rodriguez Aff. at 2-3 ¶¶ 9-10). Rodriguez asserts that he complained to various FedEx managers as well as to Adkinson's direct supervisor, John Ravenille ("Ravenille"), about this discrimination, but that no corrective action was taken. FedEx employee Kelly Scrimenti overheard Rodriguez complain to Ravenille on one occasion.

Adkinson denies ever having commented to anyone about Rodriguez's accent and, in fact, avers that Rodriguez does not have a noticeable accent. Adkinson claims, instead, that he did not consider Rodriguez for promotion "due to [Rodriguez's] lack of commitment to the LAC," which

Rodriguez concededly never completed and which, according to Adkinson, was a prerequisite of promotion at FedEx. J.A. at 112-13 (Adkinson Aff. at 2-3 ¶ 9, 11). Adkinson further asserts that Rodriguez never formally applied for a supervisory (or, indeed, for any other) position with FedEx and that McKibbon never, to Adkinson's knowledge, interviewed Rodriguez for a supervisory position. Adkinson also mentions that he himself played a role in McKibbon's subsequent termination, implying that McKibbon may have personal reasons for bolstering Rodriguez's claims.

On July 30, 2003, Rodriguez resigned from his employment with FedEx, citing FedEx's "refus[al] to address [his] numerous complaints of being discriminated against because of [his] race as an Hispanic-American." J.A. at 507 (Rodriguez Resignation Letter). He subsequently filed suit in Michigan state court, alleging racial[1] discrimination and retaliation in violation of the ELCRA. FedEx removed the case to federal court on the basis of the parties' diversity of citizenship and moved for summary judgment. Rodriguez then filed for bankruptcy, and the district court referred FedEx's summary judgment motion to the bankruptcy court, which granted it. Rodriguez appealed to the district court, which affirmed the bankruptcy court's judgment. Rodriguez now appeals the district court's judgment.

## II. JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), based on the parties' diversity of citizenship, as Rodriguez is a citizen of Michigan and seeks damages in an amount greater than $75,000, and FedEx is an Arkansas corporation with its principal place of business in Arkansas. We possess appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The moving party bears the initial burden of showing the absence of a genuine issue of material fact." *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). Once the movant has satisfied its burden, the nonmoving party must produce evidence showing that a genuine issue remains. *Id.*

The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* The nonmovant must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the

---

[1]Rodriguez's complaint alleges discrimination on the basis of race and not, as might be more appropriate on these facts, on the basis of national origin. Because, however, the two claims overlap, "it is the substance of the charge and not its label that controls." *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F.Supp.2d 455, 458 (S.D.N.Y. 1998) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).

> It is true that one's ancestry—the ethnic group from which an individual and his or her ancestors are descended—is not necessarily the same as one's national origin—the country where a person was *born*, or, more broadly, the country from which his or her ancestors *came*. Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group. Moreover, national origin claims have been treated as ancestry or ethnicity claims in some circumstances. For example, in the Title VII context, the terms overlap as a legal matter.

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) (internal quotation marks and citation omitted); *see also* MICH. COMP. LAWS § 37.2202(1)(a). For the sake of clarity and consistency, Rodriguez's discrimination claim is hereinafter characterized as one based upon national origin.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. We review a district court's grant of summary judgment de novo. *See, e.g.*, *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006).

## B. Rodriguez's Discrimination Claims

### 1. Failure to Promote

"Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). "Intentional discrimination can be proven by direct and circumstantial evidence." *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001). "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

"A plaintiff who lacks direct evidence of discrimination may still establish a *prima facie* case of discrimination by proving the elements of [his] cause of action as set out in federal discrimination jurisprudence." *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 522 (6th Cir. 1997). Michigan courts utilize the federal *McDonnell Douglas* burden-shifting framework for evaluating discrimination claims founded upon circumstantial evidence. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520-21 (Mich. 2001); *Humenny*, 390 F.3d at 906. The *McDonnell Douglas* analysis requires a plaintiff first to establish a prima facie case of discrimination by establishing that (1) he is a member of a protected group; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) that adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Hazle*, 628 N.W.2d at 521. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory rationale for the adverse employment action. *Id.* at 521-22. Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext for discrimination. *Id.* at 522.

In contending that Rodriguez has failed to establish a prima facie case of discrimination based upon FedEx's failure to promote him, FedEx first argues that Rodriguez's proffered evidence—his own affidavit, along with those of McKibbon and Williams—is inadmissible hearsay. FedEx is incorrect, at least with regard to the McKibbon and Williams affidavits, which are admissible non-hearsay. Adkinson's statements concerning Rodriguez's accent and speech pattern, as recounted in those affidavits, were allegedly made during Adkinson's employment with FedEx, to a lower-level supervisor who otherwise would have promoted Rodriguez, and in response to a direct inquiry from another manager regarding the reason for Adkinson's refusal to promote Rodriguez. It is clear, therefore, that Adkinson made the alleged statements during the course and in the scope of his employment with FedEx. *See* FED. R. EVID. 801(d)(2)(D).

FedEx also contends that Rodriguez's evidence does not establish each required element of the prima facie case. The district court, applying the *McDonnell Douglas* framework, concluded that Rodriguez's prima facie case failed because he had not shown that he applied and was qualified for a promotion or that a similarly situated non-Hispanic employee had received preferential treatment.

Before reviewing that ruling, we first consider whether Rodriguez's evidence concerning Adkinson's remarks is properly characterized as direct or circumstantial.

Our precedents, though admittedly not perfectly clear concerning this issue, suggest that the evidence is direct. In *Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991), we[2] stated that "accent and national origin are inextricably intertwined." *Id.* at 549 (internal quotation marks omitted) (citing *Fragante v. City & County of Honolulu*, 888 F.2d 591 (9th Cir. 1989), *cert. denied*, 494 U.S. 1081 (1990)). We also noted that "[t]he [Equal Employment Opportunity Commission ("EEOC")] recognizes linguistic discrimination as national origin discrimination" and that our earlier opinion in *Berke v. Ohio Dep't of Pub. Welfare*, 628 F.2d 980, 981 (6th Cir. 1980), "also recognized that discrimination based on manner of speaking can be national origin discrimination."[3] 932 F.2d at 549 (citing 29 C.F.R. § 1606).[4] More recently, in *Momah v. Dominguez*, 175 F. App'x 11 (6th Cir. 2006), *vacated & remanded on other grounds*, 127 S. Ct. 933 (2007), we rejected the plaintiff's argument that "comments . . . regarding his African accent and his poor command of the English language" constituted direct evidence, but only "because neither [of the individuals who made the comments was] responsible for the allegedly discriminatory employment action." *Id.* at 19.

Our characterization of Adkinson's comments concerning Rodriguez's accent as direct evidence of national-origin discrimination is consistent with the Supreme Court's statements on the subject. *See Hernandez v. New York*, 500 U.S. 352, 371 (1991) ("It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis."); *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 92-93 & n.5 (1973) (finding no evidence of national-origin discrimination where there was "no suggestion, for example, that the company refused to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins"), *abrogated on other grounds by* 8 U.S.C. § 1324(b). It also comports with the holdings of our sister circuits. *See Akouri v. Florida Dep't of Transp.*, 408 F.3d 1338, 1347-48 (11th Cir. 2005) (holding that a supervisor's statement that the plaintiff had not been promoted because his fellow employees "are all white and they are not going to take orders from you, especially if you have an accent" constituted direct evidence, "because the statement relates directly to the [employer's] decision . . . and blatantly states that the reason [that the plaintiff] was passed over for the promotion was his ethnicity"); *Ghosh v. Getto*, 146 F. App'x 840, 846 (7th Cir. 2005) (rejecting the plaintiff's argument that a co-worker's statement that "people are biased and prejudiced against you if you're not white, if you speak with an accent" constituted direct evidence only because the statement did "not belie a prejudicial mind set on the part of the *decision maker*, but rather observations of how *third parties* might be prejudiced" (internal quotation marks omitted)); *Bhella v. England*, 91 F. App'x 835, 846 (4th Cir. 2004) (holding that evidence that fellow employees had mocked the plaintiff's Indian accent was "not sufficiently connected to the actions taken against [the plaintiff] to carry [her] burden of proving that

---

[2] The Michigan courts use the same definition of direct evidence that we do. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001).

[3] We note that *Berke* affirmed the district court's application of the *McDonnell Douglas* circumstantial-evidence framework to a claim of national-origin discrimination based upon the plaintiff's accent. 628 F.2d at 981. Because the opinion is devoid of reasoning, however, it is not clear whether the *Berke* panel based its holding upon a determination that the evidence was circumstantial in character or simply concluded that the district court, having decided that the *McDonnell Douglas* test was the applicable framework, properly applied each prong of the test. Accordingly, we do not construe *Berke* as binding precedent concerning the nature of the evidence at issue here.

[4] The relevant regulation "defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

the actions were motivated by discriminatory animus"); *but see Amro v. Boeing Co.*, No. 97-3049, 1998 WL 380510, at *2 n.3 (10th Cir. 1998) (unpublished order) ("We construe comments about foreign accent to constitute indirect evidence of national origin discrimination.").

The question, then, is whether FedEx has borne its burden by demonstrating that it would have refused to promote Rodriguez even absent a discriminatory motive. FedEx argues that Rodriguez's failure to complete the LAC, combined with FedEx's claimed policy against promoting drivers directly into supervisory positions, satisfy that burden. Because it is for the district court to make this determination, applying the appropriate standard, in the first instance, *see Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc), we vacate the grant of summary judgment in favor of FedEx on Rodriguez's failure-to-promote claim and remand that claim for further proceedings.

## 2. Hostile Work Environment and Constructive Discharge

To establish a prima facie claim based upon a hostile work environment, a plaintiff must establish that:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of [his] protected status; (3) the employee was subjected to unwelcome . . . conduct or communication involving [his] protected status; (4) the unwelcome . . . conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 319-20 (Mich. 1996) (internal quotation marks and brackets omitted) (second and fourth alterations in original).

"[T]o survive summary disposition, [a] plaintiff [must] present documentary evidence to the trial court that a genuine issue exist[s] regarding whether a reasonable person would find that, in the totality of circumstances, [the unwelcome conduct was] sufficiently severe or pervasive to create a hostile work environment." *Id.* at 320. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," a plaintiff can prevail on a hostile-environment claim. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted). Similarly, "a constructive discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." *Champion v. Nationwide Sec., Inc.*, 545 N.W.2d 596, 600 (Mich. 1996), *quoted in Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776 n.10 (6th Cir. 1996).

The district court correctly concluded that Rodriguez had failed to establish a prima facie case under either doctrine. We have rejected hostile-environment claims arising from facts far more compelling than those alleged in this case:

> [A] hostile work environment was not shown where, over a two[-]month period, a male supervisor continuously made sexually suggestive comments about the female plaintiff's appearance, touched her breast as he removed and replaced a pen from her shirt pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house. *See Stacy v. Shoney's, Inc.*, No. 97-5393, 1998 WL 165139, at *1-3 (6th Cir. 1998) (unpublished). The Seventh Circuit found that alleged harassment lacked severity where, over a two-year period, a male supervisor

> and co-workers[] made sexual jokes about the plaintiff, commented on how she should eat a banana, told her not to wave at squad cars because people would think she was a prostitute, stared at her breasts, and touched her on the arms, fingers, and may have once poked at her buttocks. *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998).

*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005).

Similarly, we have held that a plaintiff cannot establish a constructive discharge by claiming, without more, that his employer's "failure to promote [him] to what [he] perceives as [his] rightful position created intolerable work conditions." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997). "If we were to accept this line of reasoning, every person passed over for a purportedly deserved promotion could bring an illegal discharge suit, and the distinction between the two would be erased." *Id.* Accordingly, the district court did not err in granting summary judgment in favor of FedEx on Rodriguez's hostile-environment and constructive-discharge claims.

## C. Retaliation

A plaintiff alleging retaliation in violation of the ELCRA must establish the following elements of a prima facie case:

> (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001) (internal quotation marks omitted), *app. denied*, 639 N.W.2d 809 (Mich. 2002), *quoted in Scott v. Total Renal Care, Inc.*, 194 F. App'x 292, 300 (6th Cir. 2006). "To establish causation, the plaintiff must show that his participation in activity protected by the [ELCRA] was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett*, 628 N.W.2d at 70 (internal quotation marks omitted).

The district court summarily disposed of Rodriguez's retaliation claim, stating only that "Rodriguez failed to proffer evidence that would permit a reasonable jury to conclude that FedEx gave a supervisory position to an unnamed 'White new hire off the streets' or Jim Johnson in retaliation for Rodriguez's complaints of race discrimination . . . ." J.A. at 664 (Dist. Ct. Order Aff'g Bankr. Ct. J. at 17). We may, however, affirm the district court's judgment on any ground supported by the record. *Leary v. Daeschner*, 228 F.3d 729, 741 n.7 (6th Cir. 2000).

"To establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present evidence 'sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action.'" *Walcott v. City of Cleveland*, 123 F. App'x 171, 178 (6th Cir. 2005) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). In *Walcott*, we affirmed the district court's grant of summary judgment on the plaintiff's retaliation claim "because [plaintiff] cannot demonstrate that she was treated differently before and after filing the EEOC charges." *Id.* at 179. "Defendants first failed to promote Walcott six months prior to her first EEOC filing; the fact that they did so again four months after that filing (and a third time, a month after her second EEOC filing) is insufficient to raise an inference of a retaliatory animus." *Id.*

Similarly, in this case, Rodriguez has proffered no evidence that FedEx's continued failure to promote him after his first complaint was a result of that complaint. Accordingly, the district court did not err in granting summary judgment for FedEx on Rodriguez's retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, we hereby **VACATE** the district court's grant of summary judgment for FedEx on Rodriguez's discrimination claim based upon FedEx's failure to promote him, and **REMAND** that claim to the district court for further proceedings. We **AFFIRM** the district court's grant of summary judgment for FedEx on Rodriguez's hostile-environment, constructive-discharge, and retaliation claims.

---

**CONCURRENCE**

---

ALICE M. BATCHELDER, Circuit Judge, concurring. I agree with the lead opinion as to Rodriguez's claims of constructive-discharge, hostile-environment, and retaliation. And while I agree with the lead opinion that we should reverse the district court's grant of summary judgment and remand the case for further proceedings, I disagree with its reasoning in reaching this result. The lead opinion concludes that Rodriguez has produced direct evidence that FedEx failed to promote him based on his national origin. I, however, do not think Rodriguez had presented direct evidence to establish his claim of unlawful employment discrimination, and instead would apply the *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006) (citation omitted). Critically, direct evidence "proves the existence of a fact without any inferences or presumptions." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (quoting *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir.1999)). "Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled,'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998), or, for our purposes, "I did not promote you because of your Hispanic origin." Our circuit has acknowledged that "[r]arely will there be direct evidence from the lips of the defendant proclaiming his or her [discriminatory] animus," *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998), and I find that Rodriguez has not presented such evidence here.

The lead opinion cites the affidavits of McKibbon and Williams as direct evidence of FedEx's national origin discrimination. Williams averred that he had a conversation with Adkinson about Rodriguez, during a weekly management meeting. At that time, FedEx was short a supervisor and Adkinson indicated that he had conducted interviews, including existing FedEx employees, to fill the position, but he had not found a qualified candidate. Williams suggested Rodriguez as a possible candidate. In response, Adkinson stated that "Jose is a good worker and could some day move into management." Williams then asked, in that case, why not consider Rodriguez as a candidate for the opening. Adkinson responded, "because of Jose's 'language' and 'how he speaks,' people would have a hard time understanding him." When Williams asked Adkinson if that was his only reason for not choosing Rodriguez for the position, Adkinson responded "pretty much."

McKibbon stated that a supervisor position came open and it was FedEx's practice to promote internally if there was a qualified employee. Rodriguez applied for the supervisor position. McKibbon interviewed Rodriguez two times for that position and concluded that Rodriguez was qualified for the position. McKibbon stated that he "did not hire [Rodriguez] for the supervisor position because . . . Adkinson said he was concerned about [Rodriguez's] accent, speech pattern, and capability to move up in the company." McKibbon declared that Adkinson had made these statements to him on several occasions in McKibbon's office.

While "discrimination based on manner of speaking *can* be national origin discrimination," *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991) (emphasis added), I do not agree that McKibbon's and Williams's affidavits constitute direct evidence of national origin discrimination here. One must infer that Adkinson's concern for Rodriguez's "accent," "speech pattern," "language," and "how he speaks" was based on Rodriguez's national origin—and not, for instance, a speech impediment or Rodriguez's ability to successfully fulfill a supervisory position.

As the Ninth Circuit pointed out many years ago,

Accent and national origin are obviously inextricably intertwined *in many cases*. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job.

*Fragante v. Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989) (emphasis added).

To be sure, Williams's and McKibbon's affidavits provide circumstantial evidence that FedEx's proffered reason for failing to promote Rodriguez may well have been pretextual. Accordingly, I find that Rodriguez has provided enough circumstantial evidence to withstand FedEx's motion for summary judgment, and agree with the lead opinion, that this case should be remanded for further proceedings. But I simply do not find that Rodriguez presented *any* direct evidence to establish his claim.