RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

KENNETH JAMES LOWE,

　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

WALBRO, LLC,

　　　　　　　　*Defendant-Appellee*.

┐
│
│
│
⟩ No. 24-2011
│
│
│
┘

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:18-cv-12835—Thomas L. Ludington, District Judge.

Argued: July 2, 2025

Decided and Filed: August 5, 2025

Before: GILMAN, BUSH, and READLER, Circuit Judges.

─────────────

**COUNSEL**

─────────────

**ARGUED:** Jonathan R. Marko, MARKO LAW, PLLC, Detroit, Michigan, for Appellant. David M. Cessante, CLARK HILL PLC, Detroit, Michigan, for Appellee. **ON BRIEF:** Jonathan R. Marko, Christopher Putrycus, MARKO LAW, PLLC, Detroit, Michigan, Thomas R. Warnicke, LAW OFFICES OF THOMAS R. WARNICKE, PLLC, Bingham Farms, Michigan, for Appellant. David M. Cessante, Brian D. Shekell, CLARK HILL PLC, Detroit, Michigan, for Appellee.

─────────────

**OPINION**

─────────────

RONALD LEE GILMAN, Circuit Judge. In June 2018, Kenneth Lowe was fired from his job at Walbro LLC. Lowe was 60 years old at the time and had worked at Walbro for more

than four decades. He responded by filing this diversity-of-citizenship lawsuit against Walbro, alleging that the company had violated Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, by discharging him because of his age.

A jury found in favor of Lowe after a full trial on the merits. The district court subsequently granted Walbro's motion for judgment as a matter of law and vacated the jury's verdict, holding that the evidence that Lowe presented at trial, which was materially different from the evidence that he had previously presented in overcoming Walbro's motion for summary judgment, was insufficient for the case to have been submitted to the jury. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

This court previously reversed the district court's grant of summary judgment in favor of Walbro in *Lowe v. Walbro LLC*, 972 F.3d 827 (6th Cir. 2020), holding that Lowe had raised a genuine dispute of material fact based on his supervisor's alleged statements during the termination meeting that Lowe was "getting up there in years" and was "at retirement age." Because we have previously summarized the factual background, *see Lowe*, 972 F.3d at 829–31, we focus here on the evidence presented at trial.

### A. Trial

The jury trial began on October 24, 2023. Lowe called nine witnesses, including himself, his supervisor Thomas Davidson, and forensic psychiatrist Dr. Gerald Shiener. Walbro called three witnesses, including forensic psychiatrist Dr. Elissa Benedek.

Lowe called several witnesses to testify that his performance at the company was satisfactory or above satisfactory. For example, Gregory Creighton, Lowe's supervisor immediately prior to Davidson, testified that Lowe's performance in carrying out his responsibilities, including the smooth operation of the blow-molding machines, was "above satisfactory for all of his assignments."

Another of the witnesses called by Lowe was Debby Rard, the senior human resources manager at the time of Lowe's termination. She testified that Lowe's Area Manager position

was eliminated because it was no longer needed. Rard came to this conclusion after reviewing Walbro's organizational charts and noticing that "only the janitors" reported directly to the Area Manager. She also testified she did not know that Lowe was the Area Manager when she approached Davidson to ask "why [did Walbro] have this position with no direct reports." Finally, as an unrelated matter, she testified that she made a file on her computer called "Observed Behavior Ken Lowe" due to complaints that she had received from other employees about Lowe's behavior.

Davidson similarly testified that Lowe was terminated because his position was eliminated, and that his "behavior and performance accelerated the termination." In the months before Lowe's termination, Davidson removed technicians Nate Windsor and Rick Osterbeck as Lowe's direct reports so that they instead reported to Davidson. He did this because, when he went to Lowe for updates on the maintenance of the blow-molding machines, Lowe responded insufficiently, and Davidson wanted to remove the middleman.

Eventually Davidson removed others from Lowe's direct supervision, so that "only the janitors and the tool crib were reporting to him." And Davidson acknowledged that he "was part of the final decision" to remove the Area Manager position. During the termination meeting, Davidson said that he read from a script, and that neither he nor Rard mentioned Lowe's age during the meeting.

On cross-examination, Davidson testified that he never made any comments about Lowe's age or said that Lowe was close to retirement age. Davidson noted that when he first began his job, he hired several people, including Rard and other managers, who were in their early to late 50s. He also testified that he could have recommended that Lowe be terminated in a "talent upgrade" six or seven months before Lowe's actual discharge, but that he did not do so.

Over a year and a half before Lowe's termination, Davidson recalled a ceremony celebrating Lowe's 40 years at Walbro. Lowe, according to Davidson, made a comment that "I've been working at Walbro longer than you've been alive." Regarding Lowe's behavioral issues, Davidson was told that Lowe had made an offensive comment to Osterbeck about "sucking somebody off," and that Osterbeck reported the remark to human resources. Davidson

claimed that "[o]nce that information came out, that conversation, then it accelerated the time frame for the position elimination."

Lowe then took the stand and testified regarding the October 2016 ceremony where he received an award recognizing his 40 years with Walbro. Contrary to what Davidson had said earlier, Lowe testified that when he and Davidson were sitting next to each other at the ceremony, Davidson told him: "Old man, you been here longer than I have been alive. Are you ready to retire?" Lowe further stated that he felt it was a joke at the time. This was the first time that he had heard a comment from Davidson about his age, and he testified that no one else at Walbro ever made a comment about his age besides Davidson.

According to Lowe, Davidson commented on Lowe's age at least "a half a dozen times" thereafter when he would say things like "let the old boy do it" or "let the old guy do it" during the team's daily meetings. In another instance, Lowe testified that he had a bad hip, and when Davidson and Lowe would walk and Lowe was behind him, Davidson said "are you losing a step[?]"

Between 2017 and June 2018, Lowe continued to do his job and received no comments about his performance. He did not know of any discussions about eliminating his position, did not know about Rard's "observations" document, and was not approached about any items on Rard's list. And two days before his termination meeting, Lowe showed Rard how to do some of his tasks, including how to add and remove badge access for new or old employees.

Then, on June 28, 2018, Davidson texted Lowe to come into Davidson's office, where Davidson and Rard were both waiting for him. Once Lowe was seated, Davidson read from a letter and "said that the company is going a different direction, and your job is going to be eliminated." Rard then read from paperwork, which Lowe recalled as follows:

> [I]t's not because of your age, it's not because of your race, it's not because of your religion. And then she kept on reading. And then it got down towards the bottom, and then it said it again, 'this is not because of your age.' And I said, 'this is not because of my age? You said it twice.

Rard did not respond to Lowe's query. Lowe said that he felt depressed, sad, and angry after the meeting, and that he did not sleep that night.

On cross-examination, Lowe was pressed for further details about the termination meeting:

Q. Okay. So when Tom Davidson testified under oath earlier that he said nothing about your age or retirement at the separation meeting, that was truthful testimony?

A. False.

Q. How is it false?

A. Because I testified he said that, that the company is going a different way.

Q. Your words, this is what you said Mr. Davidson testified to. "Sit down. The company is going in a different direction. Your job is being eliminated. You can go yours." That's what he said according to you?

A. Correct.

Q. No mention of age or retirement in that -- in those two sentences?

A. Correct.

Q. So when Mr. Davidson said -- testified, I should say, he testified under oath that he didn't say anything about your age or retirement during the separation meeting, that's truthful testimony?

A. That's truthful, yes.

Q. Okay. So you admit today, in front of this jury, that Mr. Davidson never said anything about age or retirement during the separation meeting, right?

A. Not during the separation.

The other notable testimony about the termination meeting was during the cross-examination of Dr. Elissa Benedek, Walbro's expert witness. Dr. Benedek was asked whether Lowe told her "that he was told, you're getting up there in years, you're getting close to retirement age, the company's going and you are going in a different direction" during the termination meeting. In response, Dr. Benedek denied that Lowe had said this to her. But Lowe's counsel impeached Dr. Benedek by reading the following from her written report: "[Y]ou're getting up there in years, you're getting close to retirement age. We, the company, are going to go in a different direction."

**B.      Verdict and trial motions**

At the close of Lowe's case-in-chief, Walbro made an oral motion for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure, arguing that Lowe had not presented sufficient evidence to support a claim of age discrimination and, in essence, that he was questioning Walbro's business judgment in eliminating the Area Manager position.   The district court held that there was a jury issue, saying:

> We have the statement that was made at the 40-year ceremony. We have the reference to having the old guy handle certain things within the plant, and, in my view, the age was mentioned twice, perhaps if only because it was included in some of the severance documents but during that meeting by the HR representative.  So there is -- the Court of Appeals agrees that there was a jury issue, and I'm satisfied that the testimony that we've received corroborates that as well.

On October 31, 2023, the jury returned a verdict in favor of Lowe, awarding backpay of $443,418 and front pay of $561,472 ($18,112 for 2023 and $108,672 for each year from 2024 through 2028).  The jury also awarded Lowe $1,300,000 in noneconomic damages.

Walbro subsequently moved for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure or, in the alternative, for a new trial under Rule 59.  It argued that Lowe had not presented sufficient evidence to permit a reasonable juror to find that age was a motivating factor in Walbro's decision to terminate Lowe's employment.  In the alternative, Walbro sought to amend the judgment to decrease the damages awarded to Lowe.

On October 22, 2024, the district court granted Walbro's motion for judgment as a matter of law and vacated the jury verdict.  The court held that the evidence that Lowe had presented at trial, which was materially different from the evidence that he presented at summary judgment, was insufficient for the case to have been submitted to the jury.

## II. ANALYSIS

We review de novo the district court's application of Rule 50 of the Federal Rules of Civil Procedure.  *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006).  "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the

record[,]" "draw all reasonable inferences in favor of the nonmoving party," and "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" and when the claim can "under the controlling law . . . be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1).

"In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action." *Kusens*, 448 F.3d at 360. Both parties agree that Michigan law governs, and that Michigan courts use the terms "directed verdict" and "judgment notwithstanding the verdict" rather than "judgment as a matter of law." *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 894 n.3 (6th Cir. 1997).

**A.     The district court properly granted Walbro's motion for judgment as a matter of law**

The ELCRA provides, in relevant part, that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, sexual orientation, gender identity or expression, height, weight, or marital status." Mich. Comp. Laws § 37.2202(1)(a). Lowe claims that Walbro violated the ELCRA by firing him on the basis of his age. Proof of discriminatory treatment under the ELCRA "may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003).

*1.     Direct evidence*

Without the evidence of Davidson's alleged ageist statements at the termination meeting, there is no direct evidence of age discrimination. The Michigan Supreme Court has adopted this court's definition of "direct evidence" in this context as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's

actions." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

In a direct-evidence case involving mixed motives—when "the adverse employment decision could have been based on both legitimate and legally impermissible reasons"—a plaintiff "must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Sniecinski*, 666 N.W.2d at 192–93 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 (1989) (plurality)). The plaintiff must also show that "the defendant was predisposed to discriminating against members of the plaintiff's protected class" and that "the defendant actually acted on that predisposition in visiting the adverse employment action on the plaintiff." *Wilcoxon v. Minn. Mining & Mfg. Co.*, 597 N.W.2d 250, 257 (Mich. Ct. App. 1999). Once a plaintiff meets the initial burden of proving that the illegal conduct "was more likely than not a substantial or motivating factor in the defendant's decision, a defendant has the opportunity to show by a preponderance of the evidence that it would have reached the same decision without consideration of the protected status." *Downey v. Charlevoix Cty. Bd. of Road Comm'rs*, 576 N.W.2d 712, 718 (Mich. Ct. App. 1998).

As we noted in our previous opinion, *Lowe*, 972 F.3d at 832, the Michigan Supreme Court has at times imposed a more stringent causation standard, requiring ECLRA plaintiffs to show "but for causation or causation in fact," not just that discriminatory animus was a substantial or motivating factor. *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016) (quoting *Matras v. Amoco Oil Co.*, 385 N.W.2d 586 (Mich. 1986)). Michigan courts have acknowledged this discrepancy, but they do not appear to have definitively resolved it. *See Hrapkiewicz v. Wayne State Univ. Bd. of Governors*, 910 N.W.2d 654, 654 (Mich. 2018) (Markman, C.J., dissenting from denial of leave to appeal) ("These interpretations of the [ELCRA] are inconsistent, as *Hecht* imposes a considerably higher causation standard than *Hazle*."). Here, both sides frame the issue in line with the *Hazle* and *Sniecinski* standard and do not otherwise suggest that but-for causation is required. Even assuming that this lower standard applies, however, we conclude that Lowe failed to provide a legally sufficient evidentiary basis to meet it, so the difference is immaterial for our purposes.

This court's previous opinion found that Davidson's alleged words at the termination meeting were direct evidence of age discrimination.  In Lowe's deposition testimony, he stated the following:

> I did ask Tom [Davidson] about why—why was I terminated?  Was it my job?  Was I not doing the job? . . . And he just—basically he didn't answer me.  He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.

*Lowe*, 972 F.3d at 831.

The above deposition testimony, however, was never presented to the jury despite Lowe's brief claiming otherwise.  His brief states:  "In response, Davidson stated, 'Well, you're kind of getting up there in years. You're at retirement age, you go one way, and the company's going the other.'"  But none of the places in the trial transcript that the brief points to present this quote as evidence of age discrimination.  Instead, the jury heard the quote only during the cross-examination of Dr. Benedek when Lowe's counsel read the quote from the doctor's report in order to impeach her testimony.

Dr. Benedek's report, however, cannot be used as substantive evidence.  During trial, both parties and the district court agreed that the psychiatric experts' reports were hearsay.  At no point did either party even attempt to argue that the reports were not hearsay or that a hearsay exception was applicable.  And immediately before Lowe's counsel read from Dr. Benedek's report, he agreed that the report was hearsay and that he was using Dr. Benedek's report solely for impeachment purposes.

Under Rule 801(c) of the Federal Rules of Evidence, hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  But hearsay evidence is admissible for impeachment purposes. *See Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 720 (6th Cir. 2005) ("It is well-settled that where the contents of the writing used to refresh a witness's memory include prior statements of that witness that are inconsistent with the witness's present testimony, the prior statement may be introduced to impeach the witness.") (citing *United States v. Shoupe*, 548 F.2d 636, 642–43 (6th Cir. 1977)).

Impeachment evidence is evidence used to discredit a witness and not used to prove the truth of the matter. *In re Dalton's Est.*, 78 N.W.2d 266, 270 (Mich. 1956) (opining that it is "almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness and not competent as substantive evidence of the facts to which such statements relate" (citation omitted)). In sum, impeachment evidence is *not* substantive evidence. *See Rush*, 399 F.3d at 720; *see also United States v. Munoz*, 605 F.3d 359, 382 (6th Cir. 2010) (noting that hearsay testimony "could have been used only for the limited purpose of impeaching [the declarant] by prior inconsistent statement, not for the truth of the matter asserted").

Because Lowe agreed at trial that Dr. Benedek's expert report was being used only for impeachment purposes, and because he never sought a hearsay exception at trial, he cannot now claim that the psychiatric report was substantive evidence. Nor does Lowe argue on appeal that there was an applicable hearsay exception. The jury, therefore, could not consider the expert report as affirmative, substantive evidence that Davidson made the ageist comments at the termination meeting.

Lowe cannot point to any other example of instances where the jury heard direct evidence of age-related discriminatory comments at the termination meeting. At trial, Lowe simply claimed that age-related comments were made during the termination meeting—a broad statement that could encompass Rard's reading from the termination script that the termination was "*not* because of [Lowe's] age" (emphasis added). But this did not contradict Lowe's earlier testimony at trial that *Davidson* said nothing about age or retirement when Lowe was terminated.

In Lowe's reply brief, he argues that the district court erred when it did not allow Lowe's counsel to use Lowe's deposition testimony to impeach or refresh Lowe's recollection. But Lowe's counsel clearly had the opportunity to ask Lowe about his deposition testimony on redirect examination. Instead of asking Lowe about what he had said about Davidson's age-related comments at his deposition testimony, Lowe's counsel asked only a broad question to confirm that there was a mention of age at the termination meeting. To the extent that Lowe's

counsel should have been allowed to impeach his own client with the previous deposition testimony during Lowe's case-in-chief, that alleged error was therefore harmless.

Without evidence of Davidson's alleged ageist comments at the termination meeting, the only relevant testimony that the jury heard was that Davidson made a number of stray remarks about Lowe's age over an almost two-year period of time that began in October 2016. Most notably, during a ceremony recognizing Lowe's 40 years of service to Walbro, Davidson allegedly said: "Old man, you been here longer than I have been alive. Are you ready to retire?" The jury also heard about a few other comments made by Davidson during several team meetings, saying things like "let the old guy do it."

Lowe argues that this court's previous opinion stated that these other ageist comments made outside the time of firing might constitute direct evidence of discrimination. To the contrary, the prior opinion focused only on Davidson's alleged statements made at the termination meeting. *See Lowe*, 972 F.3d at 833–34. The Michigan Supreme Court has discussed factors to consider in determining whether such statements were evidence of discrimination or simply "stray remarks":

> (1) whether they were made by a decision maker. . . , (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision.

*Sniecinski*, 666 N.W.2d at 194 n.8. The statements in question, one made at a ceremony well over a year prior to the decision to terminate Lowe and several other random comments made at unspecified times, all unrelated to the decision-making process, can hardly "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle*, 628 N.W.2d at 520.

### 2.        *Indirect evidence*

This leaves us with the issue of indirect evidence of age discrimination. Under Michigan law, the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies when "assessing motions for summary disposition

and [for] directed verdict in cases involving circumstantial evidence of discrimination." *Hazle*, 628 N.W.2d at 523; *see also Sniecinski*, 666 N.W.2d at 193. This framework "allow[s] a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 837 (Mich. 2001) (emphasis in original). The framework functions as follows:

> The *McDonnell Douglas* analysis requires a plaintiff first to establish a prima facie case of discrimination by establishing that (1) he is a member of a protected group; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) that adverse employment action occurred under circumstances giving rise to an inference of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the adverse employment action. Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext for discrimination.

*In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Hazle*, 628 N.W.2d at 521–22). Walbro contended that Lowe failed to present a prima facie case of age discrimination under the *McDonnell Douglas* framework.

There are "multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case." *Hecht v. Nat'l Heritage Academies, Inc*, 886 N.W.2d 135, 147 (Mich. 2016). But to satisfy the fourth element, the plaintiff must "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" such as age. *Hazle*, 628 N.W.2d at 525 (internal quotation marks and citation omitted). Most commonly, plaintiffs satisfy this fourth element by demonstrating that they were either (1) treated differently from similarly situated individuals outside the protected class, or (2) replaced by another employee who does not belong to the protected class under circumstances giving rise to an inference of discrimination. *See Parhar v. Dart Container Corp.*, No. 258471, 2006 WL 664165, at *2 (Mich. Ct. App. Mar. 16, 2006) (per curiam).

This kind of evidence is normally presented in conjunction with discriminatory comments to demonstrate a causal connection between the two. *See Gorbe v. City of Lathrup Vill.*, No. 356801, 2023 WL 326103 at *5 (Mich. Ct. App. Jan. 19, 2023) (per curiam) (holding

that a supervisor's comments about a plaintiff's old age, "together with other evidence, may support an inference of discriminatory animus"); *Williams v. Dep't of Health & Hum. Servs.*, No. 355203, 2021 WL 5027962, at \*6–8 (Mich. Ct. App. Oct. 28, 2021) (per curiam) (holding that a "discriminatory atmosphere," together with evidence that similarly situated employees were treated differently, established the fourth element of a prima facie claim when the "discriminatory atmosphere" was close in time to the adverse employment action).

Lowe did not establish a prima facie case of age discrimination under the indirect-evidence framework and failed to "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors," such as age. *See Hazle*, 628 N.W.2d at 525 (internal quotation marks omitted). As discussed above, the only relevant evidence that Lowe presented to the jury was limited to Davidson's alleged ageist comments at Lowe's 40-year celebration and to random comments made by Davidson about Lowe being an "old man." There was no evidence presented that someone outside the protected class was treated differently, nor was Lowe's position filled by anyone. Further, Lowe did not contest Davidson's testimony that, around the same time, Davidson hired several people close to Lowe's age to serve as managers, or that Davidson could have included Lowe in an earlier reduction in force but chose not to do so. This testimony tends to support Walbro's argument that age was not a motivating factor and greatly undermines any contention that Walbro "was predisposed to discriminating against members of [Lowe's] protected class." *See Wilcoxon*, 597 N.W.2d at 257.

Based on this record, no causal connection has been shown between Davidson's alleged comments and the termination decision. These comments alone are therefore insufficient to satisfy the fourth element of a *prima facie* case under the indirect-evidence framework. *See Major v. Vill. of Newberry*, 892 N.W.2d 402, 414 (Mich. Ct. App. 2016) ("In cases of both direct and indirect evidence, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." (internal quotation marks and citation omitted)).

Michigan law provides that courts should utilize the *McDonnell Douglass* approach when considering a directed verdict in cases involving circumstantial evidence of ELCRA claims of discrimination. *See Hazle*, 628 N.W.2d at 523. Even under federal law, this court has previously

held that judgment as a matter of law is appropriate in circumstances similar to those in this case. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724–25 (6th Cir. 2004) (holding that even though there was sufficient evidence to permit a reasonable jury to reject the defendant's proffered reason for the plaintiff's termination, the plaintiff failed to produce sufficient evidence to support an inference of discrimination, and the district court was therefore found to have erred in denying the defendant's motion for judgment as a matter of law). The *Noble* court held that

> a court may not, after a trial on the merits, grant judgment as a matter of law *merely because* the plaintiff failed to establish a *prima facie* case, but when the indirect method of proof is the only remaining avenue by which a plaintiff can establish his claim of intentional discrimination, it is necessary and appropriate for a court to evaluate the evidence supporting the plaintiff's *prima facie* case.

*Id.* at 727.

Here, as in *Noble*, Lowe did not present evidence that he was replaced by someone younger, that he was treated differently from similarly situated individuals outside the protected class, or that any other evidence connected the passing references to his age to the decision to terminate him. Lowe, therefore, did not present sufficient evidence for a jury to find that age discrimination was the reason, or even one of the reasons, for his termination.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.